**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FELIX RENDON OSUNA,

Defendant-Appellant.

No. 98-5005

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 97-CR-110-C)**

---

Neal B. Kirkpatrick, Assistant United States Attorney, (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff/Appellee.

Jill M. Wichlens, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender, with her on the briefs) Denver, Colorado, for Defendant/Appellant.

---

Before **BRORBY** , **HOLLOWAY** , and **HENRY** , Circuit Judges.

---

**HOLLOWAY** , Circuit Judge.

---

Defendant-Appellant Felix Rendon Osuna was convicted on jury verdicts of

guilty of possession of a machine gun in violation of 18 U.S.C.§ 922 (o) and

possession of an unregistered firearm or destructive device in violation of 26 U.S.C. §§ 5845 and 5861(d). The latter charges involved possession of a grenade launcher and grenade, and four silencers.

A co-defendant, Benavente, moved for acquittal at the close of the government's case and that motion was granted. A similar motion by Osuna was denied. The case was submitted to the jury. Following his convictions on the jury's verdicts, Osuna was sentenced to imprisonment for 51 months, as to each count, with those sentences to run concurrently and a special monetary assessment of $600.00. Other counts were dismissed as to Osuna.

The judgment of convictions and sentences was entered on January 12, 1998 and a timely notice of appeal was filed by Osuna that day. On this appeal two central issues are raised. First, Osuna claims error by violation of the Court Interpreters Act, 28 U.S.C. § 1827, due to the failure of the trial court to appoint a Spanish interpreter for him. Second, Osuna asserts error in sentencing him under the sentencing guidelines due to the counting of inert grenades as destructive devices under U.S.S.G. § 2 K2.1. We will consider these claims of error in turn.

I

The original indictment alleging the charges against Osuna was returned on August 7, 1997 and Osuna was arrested that day, along with co-defendant, Benavente, who is not involved in the instant appeal. A four day jury trial of Osuna commenced on October 6, 1997. Osuna testified at his trial, asserting an entrapment defense.

Osuna was born and raised in Mexico, but came to the United States and has been a naturalized citizen living in California for some 27 years before the trial. His native language is Spanish, although he also speaks English and testified in English at his trial. [1] We will detail later the language difficulties that developed during the trial. As noted, see supra n.1, counsel for the government suggested that "maybe we ought to have a Spanish interpreter." VI R. 408. As noted below, defense counsel rejected that suggestion. Id. The judge declined the suggestion and no interpreter was appointed during the trial.

---

[1]Osuna's Spanish language usage is indicated several times in the record. At trial Osuna testified he was born in Mazatlan, Sinaloa, Mexico some 49 years earlier (1948) and did not come to the United States until 1975. VI R. 375-76. In its opening statement the prosecution said it obtained a Spanish speaking ATF agent (Ms. Teneyuque) on an emergency basis from Houston as they "had to have a Spanish-speaking agent," IV R. 6, to help with the reverse sting operation. Just after the trial judge noted that Osuna's testimony was "causing severe confusion," the prosecutor said he was "just going to suggest maybe we ought to have a Spanish interpreter." VI R. at 408.

II

The Court Interpreters Act, in 28 U.S.C. § 1827 (d)(1), protects the rights of parties, including a defendant in a criminal case, who speak only or primarily a language other than the English language. In pertinent part, the statute provides that the presiding judicial officer shall utilize the services of the most available interpreter or another qualified interpreter:

> if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case) or a witness who may present testimony in such judicial proceedings -
>
> > (A) speaks only or primarily a language other than the English language; or
> >
> > (B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)
>
> so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

The statute's protections are liberally applied: "Any indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language should trigger the application of Sections (d) and (f)(1) of the Court Interpreters Act." United States v. Tapia, 631 F.2d 1207, 1209 (5th Cir. 1980).

In Tapia, the record was unclear as to whether an interpreter was provided, as to whether or not failure to provide one inhibited the defendant in that criminal case from comprehension of the proceedings or communication with his counsel, and accordingly the court concluded that it "must remand the case for proper findings to comply with the dictates of the Court Interpreters Act of 1978." Id. at 1208-09. The Tapia court agreed with the contentions that appointment of an interpreter is discretionary and that the necessity for an interpreter is a question of fact. Id. at 1209. The Fifth Circuit held that the Act "makes it incumbent upon a trial Court to make certain findings on the record, which [were] lacking . . . ." Id. Further the Fifth Circuit made it clear that "waiver of an interpreter is not a decision for [defendant's] counsel or the Court to make. It is the defendant's decision, after the Court explains to him the nature and effect of a waiver." Id. at 1209.

The Tapia court there concluded that if the trial judge should find that an interpreter was not sitting at the defendant's side interpreting the proceedings to him, then the court should inquire whether such failure inhibited Tapia's comprehension of the proceedings, or whether such failure prevented him from assisting his counsel in the cross-examination of witnesses. Id. at 1210. The basic inquiry is whether failure to provide an interpreter made the trial fundamentally unfair. Id. at 1210. In Valladares v. United States, 871 F.2d 1564,

1565-66 (11 th Cir. 1989), the Eleventh Circuit held that: "Section 1827 does place on the trial court a mandatory duty to inquire as to the need for an interpreter when a defendant has difficulty with English.      See United States v. Tapia  , 631 F.2d 1207, 1209 (5 th Cir. 1980)."

Under these standards, we must determine whether our record shows indications that should trigger the application of Sections (d) and (f)(1) of the Court Interpreters Act.  Because Osuna did not raise the issue to the trial court, we review the issue for plain error.      See United States v. McDonald  , 933 F.2d 1519, 1524 (10th Cir. 1991).   [2]  From the outset, the government showed awareness of the language difficulty.  As noted earlier, in the government's opening statement, it was stated that an ATF Agent from Houston, Ms. Teneyuque, was placed on the case "on an emergency basis because Mr. Osuna, we knew from conversations, is a Spanish speaker as well as English, but he also speaks Spanish, so we had to have a Spanish speaking agent."  VI R. at 6.

In the trial proceedings of October 8, difficulty arose during the testimony of Mr. Osuna on direct examination.  Osuna testified about a transaction in Tulsa during the reverse sting operation the government conducted.  Osuna said that one

---

[2]  Plain error is established when: (1) there is error; (2) the error is plain or obvious; and (3) the error affected substantial rights.  See United States v. Olano, 507 U.S. 725, 732-34 (1993).  Moreover, we have discretion to remedy plain error, which we should do if the errors "seriously affect the fairness, integrity or public reputation of judicial proceedings."  Id. at 735-36.

participant, Thao Le, filled out a purchase order for some of the weapons involved and another participant, an undercover agent, Robert Lewis, handled the guns. VI R. at 405-06. Government counsel objected that some testimony of Osuna was inaccurate, id. at 406, and the judge said that Osuna in answering the questions was going beyond his answer and "causing severe confusion . . . ." VI R. at 408. At that point government counsel stated: " I was just going to suggest maybe we ought to have a Spanish interpreter ." Id. at 408 (emphasis added). Defense counsel commented that he thought that "would even be more difficult." Id. However, as the Fifth Circuit made clear in United States v. Tapia, 631 F.2d at 1209 "a waiver of an interpreter is not a decision for [defendant's] counsel or the Court to make. It is the defendant's decision, after the court explains to him the nature and effect of a waiver."

The trial judge noted that there was a problem about the rapidity of Osuna's testimony. The judge said that if the defendant slowed down, then "we can understand him. But there is some problems at times when he lapses into what appears to sound like his Spanish name . . . ." Id. at 408-409.

Thus there were difficulties that appeared involving both the rapidity of Osuna's testimony and his Spanish speaking background. The combined effect of these problems caused repeated difficulties for the court reporter. In the proceedings of the first day of trial, while Osuna was describing the duties of his

job with a school district, his testimony was problematic for the reporter. She said Osuna talked about "inspection for (unintelligible) maintenance." VI R. at 381.[3] Very soon thereafter, Osuna was describing his transactions in his firearms shop and again the reporter noted his response was "(unintelligible)." Id. at 386. The following page of the record covers testimony by Osuna about records on his background and the reporter again said his answer was "(unintelligible)." Id. at 387.

The same problem was noted two pages later in the record by the reporter who there noted that Osuna's answer concerning customers of his firearms business was again "(unintelligible)." Id. at 389. At this point the judge cautioned Osuna not to go "too fast." In the following question by defense counsel, Osuna was asked whether he understood counsel's question and Osuna said: "No. Repeat." Id. at 389. A further difficulty was shown by the reporter's statement on the following page of the record where Osuna's testimony discussed transactions in firearms, and the reporter stated part of Osuna's answer was "(unintelligible)." Id. at 390; see also id. at 393. The judge then said "I'm not sure I'm understanding what he's saying." Id. at 393. Defense counsel cautioned Osuna he would have to slow down, stating "     The judge is having a little

---

[3]In all, the court reporter noted some fourteen (14) times during Osuna's testimony when his statements were "unintelligible". See VI R. at 378 (twice); 379; 380-81; 386; 387; 389; 389-90; 393; 418; 434-35; 438; VII R. at 461; 465.

difficulty, and I think the jurors may be too. So just slow it down so we can understand." Id. at 394 (emphasis added).

Thus there were difficulties from both the rapidity of Osuna's testimony, and his basic Spanish language usage. While Osuna's rapidity in speaking was one apparent cause of the difficulties, the protection of the Court Interpreters Act to alleviate language problems may not be disregarded. Perhaps adoption of the suggestion of government counsel for a Spanish interpreter could have removed much of the difficulty. We cannot determine from this record whether use of an interpreter would have alleviated the problem because the duty imposed by Section 1827 of the Act to inquire as to the need for an interpreter was not observed. See Valladares, 871 F.2d at 1565-66 (citing Tapia, 631 F.2d at 1209). The trial judge made no inquiries or findings as to the need for an interpreter, although the repeated language difficulties suggested the possible need for an interpreter.

We hold that the judge should on remand determine from the trial record whether lack of an interpreter inhibited Osuna's comprehension of the proceedings or his ability to assist in presenting his case to the jury. See Tapia, 631 F.2d at 1209-10. We are not determining that a new trial is required on this record, but we do hold that findings should be made, as were required in Tapia, to determine whether lack of an interpreter inhibited communication by Osuna with

the court and jury, or inhibited Osuna's comprehension of the proceedings and assistance to his counsel "to such an extent as to have made the trial fundamentally unfair..." Tapia, 631 F.2d at 1210. In Rock v. Arkansas, 483 U.S. 44 (1987), the Supreme Court stated: "The right to testify on one's own behalf at a criminal trial... is one of the rights that 'are essential to due process of law in a fair adversary process' . . . ." Id. at 51 (quoting Faretta v. California, 422 U.S. 806, 819 n.15 (1975)).

In sum, due to the difficulties which became apparent during the trial proceedings here, it was the trial judge's duty to inquire into the possible need to obtain the services of an interpreter under the Court Interpreters Act. [4] Osuna should have been advised of his right to a Spanish interpreter and a determination should have been made whether an interpreter was required to assure a fair trial. If the defendant stated he wished to waive his rights under the Act, the trial judge

---

[4] We hold that the district court's failure to conduct the proper inquiry is plain error. Osuna's defense in this case was entrapment. While Osuna did receive the benefit of a proper entrapment instruction, I R. at Tab 42, we cannot comfortably say that the jury was able to understand his testimony to fully consider the merits of his defense. See Rock, 483 U.S. at 51; cf. United States v. Cirrincione, 780 F.2d 620, 634 (7th Cir. 1985)(defendant denied due process when a "credible claim of incapacity to understand due to language difficulty is made and the district court fails to review the evidence and make appropriate findings of facts."). At one point during Osuna's direct examination, the judge stated: "the jury has got to be having problems understanding. And I know that – I can see them at times kind of shaking their heads a little bit . . . ." VII R. at 449.

should have determined the validity of such waiver, which was required to be made by the defendant himself, not by his counsel or the trial court.      See Tapia, 631 F.2d at 1209.

Since these protections were not extended to him, we must remand for findings, and if necessary, further proceedings in the trial court to make those findings.  If the judge finds that the language difficulties did not inhibit Osuna's capacity to understand and to communicate at his trial, or that a valid waiver of an interpreter was made personally by the defendant, then upon those findings the judge may leave the conviction undisturbed.  If however, the judge finds that Osuna was inhibited in understanding or communicating at his trial, then the convictions must be set aside for a new trial.

### III

Osuna also challenges his sentence, claiming that the district court erred in counting nine "inert" grenades as "destructive devices" within the meaning of the term "firearm" of § 2K2.1 of the Sentencing Guidelines.      [5]   § 2K2.1(b)(1) requires a four-level increase in a defendant's base offense level for the involvement of 13-24 firearms but only a three level increase for involvement of 8-12 firearms. See U.S.S.G. § 2K2.1(b)(1)(1997).  Osuna did not object to the inclusion of the

---

[5]Though §2K2.1 refers only to "firearms," Application Note 1 defines "firearm" to include "any destructive device" as defined in 18 U.S.C. § 921(a)(3).

"inert" grenades at sentencing; thus we review their inclusion for plain error. [6]

The record indicates that Osuna purchased from the government's undercover agent three machine guns, four pistols with silencers, a semi-automatic rifle, one live high-explosive hand grenade, and nine "inert" grenades. V R. at 17-22, 33. The Pre-Sentence Report relied on by the district court in calculating Osuna's sentence included the nine "inert" grenades for a total of 18 firearms. II R. at 6. Because the nine "inert" grenades were included, four points were added to Osuna's base offense level, for a base offense level of 24. Id. With Osuna's criminal history, Osuna's guideline range was 51 to 63 months. Id. at 10. Only three points could have been added if the district court had excluded the "inert" grenades, producing a base offense level of 23. The Guideline range for a base offense level of 23, together with Osuna's criminal history, is 46 to 57 months' imprisonment.

The government confesses error in the inclusion of the nine "inert" grenades. Brief-in-Chief of Appellee at 10. We agree. [7] § 2K2.1 authorizes increases in a defendant's base offense level for "destructive devices." "Inert"

_____

[6]Osuna did object to the inclusion of the nine "inert" grenades plus the one live grenade on other grounds. See II App. at 1-3. Since the remand we make may result in the convictions being undisturbed, we will go ahead and consider this claim of error in sentencing related to counting the "inert" grenades.

[7]Of course we are not bound by a party's confession of error of law. See Koch v. United States Dept. of Interior, 47 F.3d 1015, 1018 (10th Cir. 1995).

hand grenades, by definition, are not "destructive devices" nor can they be "readily assembled" into "destructive devices." United States v. Blackburn, 940 F.2d 107, 110 (4 th Cir. 1991).

The district court's error was not harmless. Excluding the nine "inert" grenades decreases Osuna's base offense level from 24 to 23. This decrease alters Osuna's sentence range from 51-63 months to 46-57 months. The fact that guideline ranges overlap does not make a plain error harmless. See United States v. Urbanek, 930 F.2d 1512, 1515-16 (10 th Cir. 1991)(remand required despite fact that sentence fell within overlapping guidelines ranges).

IV

Accordingly, on remand the trial judge shall consider the questions under the Court Interpreters Act and make determinations thereon as specified above. Then if the convictions are not disturbed for error in connection with the Court Interpreter's Act issue, in any event the trial judge must re-sentence the defendant by considering only the sentencing range of 46-57 months.

**IT IS SO ORDERED**.

No. 98-5005 – United States of America v. Osuna

**HENRY** , Circuit Judge, concurring.

I join in this opinion because I am persuaded that this circumstance – the number of unintelligible portions of the transcript, the judge's repeated efforts to clarify the testimony offered by the defendant, and particularly the prosecutor's explicit concern [1] that "maybe we ought to have a Spanish interpreter," V.I.R. 408 – was sufficient to invoke the Court Interpreters Act. Although I am not sure that United States v. Tapia is correct that "[a]ny indication . . . that a criminal defendant speaks . . . primarily a language other than English" is the proper standard, 631 F.2d 1207, 1209 (5th Cir. 1980) (emphasis added), I believe that these indications were enough to "place on the trial court a mandatory duty to inquire as to the need for an interpreter . . . ." Valladares v. United States , 871 F.2d 1564, 1565 (11th Cir. 1989).

Here, the district judge (who was obviously concerned about these matters) may have implicitly determined that Mr. Osuna did not require the services of an interpreter, but I am unable to determine whether he made such a finding from the record before us. Accordingly, I concur with the decision to remand to the district court to consider the question and make findings explicitly on the record.

---

[1] I appreciate the prosecutor's candor at trial and oral argument. Such professional advocacy is commendable.

No. 98-5005 – United States of America v. Osuna

**BRORBY** , Circuit Judge, dissenting.

I dissent from the majority's ruling under the Court Interpreters Act. The record reveals no abuse of discretion in the district court's failure to make express findings concerning Mr. Osuna's need for an interpreter.

The Court Interpreters Act commands an interpreter if the defendant or witness " *speaks only or primarily a language other than the English language* … so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witnesses' comprehension of questions and the presentation of such testimony." 28 U.S.C. § 1827(d)(1) (emphasis added). Accordingly, the trial judge, observing the proceedings first-hand, must first determine whether the witness' sole or primary language is a language other than English. Only if English is not the primary language does the Court Interpreters Act makes it incumbent upon the court to further inquire and make certain findings concerning the degree to which a primary language difference inhibits communication or comprehension. Because the trial judge is in the best position to assess a defendant's or witness' language usage, comfort level and intelligibility, the appointment of an interpreter under

§ 1827 is committed to the sound discretion of the trial judge. *See, e.g., United States v. Arthurs*, 73 F.3d 444, 447 (1st Cir. 1996); *United States v. Yee Soon Shin*, 953 F.2d 559, 561 (9th Cir. 1992); *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989).

In my opinion, the majority fails to apply the abuse of discretion standard to the trial court's threshold determination in this case. Rather than defer to record evidence in support of a conclusion that the Court Interpreters Act does not apply to Mr. Osuna because his primary language is English, the majority concludes, de novo, Mr. Osuna's Spanish-speaking background warrants further inquiry under the Act. In so doing, the majority "fly specs" the transcript and assumes the trial court judge may have failed to recognize Mr. Osuna's capacity to understand and communicate was impaired. This approach infringes upon the trial court's discretion to evaluate, as a threshold matter, a defendant's or witness' primary language usage.

The record establishes Mr. Osuna is a naturalized citizen, having lived in the United States for over twenty-seven years. The record further establishes he regularly speaks in English and testified in English at his trial. Moreover, Mr. Osuna never claimed his principal language was other than English, never

requested an interpreter, and did not object to the court's failure to appoint one when the prosecution suggested an interpreter might be helpful. To the contrary, defense counsel expressly rejected the prosecution's suggestion. These facts weigh heavily against a finding of abuse of discretion. *See Yee Soon Shin*, 953 F.2d at 561.

Additionally, a review of Mr. Osuna's testimony, which fills ninety-seven transcript pages, reveals that most of Mr. Osuna's answers are articulate and even exhibit a high degree of familiarity with idiomatic English and with the technical details of firearms. Mr. Osuna's less articulate answers fall into one of three categories: (1) he spoke too rapidly for the court reporter to transcribe accurately, thus prompting several instructions to "slow down"; (2) he tended to answer a question with a stream of consciousness rather than give a nice, precise answer, thus prompting admonitions to answer the question; and (3) he spoke in the jargon of gun dealers, such as "Okay. It's a Model 93 full; two rifles with retractable stock; six magazines with mag clamp, ... three Beretta 92FS, blue, w/supp. or silencer." None of these communication pitfalls is related to primary use of a language other than English. Read as a whole, Mr. Osuna's testimony simply does not suggest the district court abused its discretion in failing to apply the Court Interpreters Act.

The fact Mr. Osuna was born in Mexico and occasionally spoke Spanish, and the fact a Spanish-speaking ATF agent assisted with the reverse sting operation simply does not establish as a matter of law that Mr. Osuna spoke only or primarily Spanish. Indeed, my reading of the record fails to reveal any such showing. There is absolutely no doubt Mr. Osuna communicated what he wished to the jury. Additionally, I would note much of Mr. Osuna's testimony was in response to his counsel's leading questions. If one assumes, *arguendo*, Mr. Osuna was unable to effectively communicate in English, his counsel certainly accomplished the communication for Mr. Osuna. Stated differently, even if one assumes error, it was harmless.

Because I conclude the trial court judge did not abuse his discretion in failing to apply the Court Interpreters Act, I would affirm.