**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ALFREDO ROSARIO-SARIAS, aka
Miguel Crespo-Quintero, aka
Victorino Portillo-Villalba, aka Jose
Garcia-Quintero, aka Ramiro
Ramos-Ramirez, aka Jose Garcia-
Quinter,

      Defendant-Appellant.

No. 98-4189
98-CR-21—001-S
(D.Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, HOLLOWAY** and **BRISCOE**, Circuit Judges.

---

Defendant-Appellant Alfredo Rosario-Sarias was indicted on one count of

illegal re-entry into the United States by a previously deported alien, a violation of

8 U.S.C. § 1326. Prior to trial, Mr. Rosario moved unsuccessfully to suppress

statements he had made in an interview with an agent of the Immigration and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Naturalization Service (INS). He was convicted following a bench trial on stipulated facts and sentenced to 70 months' imprisonment. He now brings this appeal, challenging the district court's denial of his motion to suppress.

**I**

Defendant had been arrested on unrelated state charges on December 3, 1997, and was being held in the Salt Lake County jail. At the time of his arrest an INS "detainer" had been issued. INS Special Agent Kim Kitts was assigned the case and began an investigation by running a computer search of the NCIC records. As a result of her efforts, Agent Kitts received a "rap sheet" from the FBI, as well as one from the State of Oregon. Agent Kitts also determined from the INS's own records that Defendant had been previously deported on three occasions.

On December 10, 1997, Agent Kitts arranged for other agents of the INS to "borrow out" the Defendant and bring him to the INS offices for an interview. According to Kitts's testimony at the suppression hearing, to "borrow out" an inmate meant to temporarily book the inmate out into custody of the INS "detention guys" for the purpose of an interview, after which the inmate would be returned to the county jail. While being transported, Defendant was restrained in handcuffs and a "belly chain," but upon arriving at the INS office the restraints were removed.

Agent Kitts testified that she interviewed Defendant in Spanish, a language in

which she believes that she is proficient although not fluent.  The interview began with Kitts reading Defendant his *Miranda*[1] rights in Spanish from a form.  She then asked if he understood his rights and would be willing to answer questions.  She testified that Defendant responded that he understood his rights.  Agent Kitts testified that Defendant signed the form, indicating that he was willing to waive his rights and answer questions.  She said that before asking him to sign the form, she read, in Spanish, statements of his willingness to answer questions.  II R. 19.  Agent Kitts testified that she did not recall any verbal response from Defendant after she read this portion of the form to him, but that he did sign the form.  She said that Defendant gave no indication that he was confused about what was happening during the interview.  *Id*. at 20.

After reading the statement of rights to Defendant and obtaining his signature on the waiver of rights form, Agent Kitts began questioning Defendant about his immigration status and about the prior convictions appearing on the rap sheets.  According to Kitts's testimony at the suppression hearing, Defendant admitted that he had been deported previously and had returned to the United States without permission.  She also testified that he admitted prior convictions, although she was not asked and did not say what specifically he admitted in this regard.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Agent Kitts obtained Defendant's signature on a second document during this interview. This form consists of a summary of the interview transcribed in question and answer format. It is used to facilitate the reinstatement of a prior order of deportation, according to Agent Kitts. Near the beginning of the document is a section in which the interviewee acknowledges the circumstances and purpose of the interview, following which there appears this statement: "[Agent Kitts] has told me that my statement must be freely and voluntarily given and has advised me that any statement I make may be used against me *in any administrative proceeding* ." (Emphasis added).

The only other witness who testified at the suppression hearing was the Defendant. With the assistance of a Spanish interpreter, Defendant testified that he is from southern Mexico, and in his home town the primary language is Mizteco, an Indian language. Defendant said he had schooling "[o]nly to Fourth Grade." II R. 39.. (Later at the bench trial, Defendant testified he had two years of schooling. III. R. at 6). At the suppression hearing Defendant said that young people do not usually begin learning Spanish in his home town until age fifteen or sixteen. He testified that as a result he has only limited ability to read and write in Spanish. He indicated that he understands almost no English. He admitted having been arrested and prosecuted several times, but with regard to having been informed several other times of his

rights, he said that he had "never understood any of that." II R. at 46.

## II

Defendant's motion to suppress was referred to a Magistrate Judge, who conducted an evidentiary hearing. At the conclusion of the hearing the judge requested supplemental briefs from the parties. After these were received, the judge then issued his report and recommendation. The Magistrate Judge recited the factual background and the testimony about an interview by Special Agent Kitts of the Immigration Service on December 10, 1997, with Defendant. The judge noted that prior to commencing the interview Agent Kitts read the Defendant his rights in Spanish from an Immigration I-214 form, Government Exhibit 1, which was introduced in evidence along with an English version of the form, Government Exhibit 2. Exhibit 1 shows the defendant's signature in two places with the December 10, 1997 date. The second signature of Defendant appears below a waiver paragraph which, when translated, reads substantially as follows:

> I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Agent Kitts testified that she read lines 1-11 from the Spanish version of the I-214 form to Defendant. II R. 16. The section on the English version of the form

states in part:

"Before we ask you any questions, you must understand your rights.

> You have the right to remain silent. Anything you say can be used against you in court, or in any immigration or administrative proceeding . . ."

Government Exhibit 2.

Agent Kitts testified that after she advised Defendant of his rights, she asked if he understood them. Defendant responded that he did and Agent Kitts stated that she then read the waiver section of the form to the Defendant in Spanish. Report and Recommendation at 6. The Defendant testified that he had schooling only to the Fourth grade. He said that he reads and writes "very little in Spanish," and that he has difficulty comprehending things in Spanish because his native language is Mizteco, which is an Indian language used in southern Mexico. Report and Recommendation at 7. Defendant testified that in his hometown, they did not speak Spanish until he was older, 15 or 16, and he said he understands almost no English. *Id.* at 7.

The Magistrate Judge made a legal analysis in his Report and Recommendation. I R. at 9-15. He noted that the Defendant's primary argument is that he did not understand the *Miranda* warnings given to him by Agent Kitts due to a language barrier, and that his alleged waiver of those rights was not knowingly, intelligently and freely made. The government, on the other hand, maintained that the

Defendant's knowledge of Spanish allowed him to fully understand his *Miranda* rights. Report and Recommendation at 9. The judge noted that there was no dispute that the interview of Defendant took place in a custodial setting; that prior to questioning, Defendant was advised by Agent Kitts in Spanish of his rights under *Miranda.* The judge said the evidence reflects that during the interview there was never any show of force by Agent Kitts or other factors indicative of coercion or duress. Report and Recommendation, I R. at 11. Thus the statements by Defendant were found to have been voluntarily and freely given (satisfying the first requirement for a valid waiver of Defendant's *Miranda* rights). *Id*. at 12.

The judge then considered the second requirement concerning a waiver - that it be made with full awareness of the right being abandoned and the potential consequences. Report and Recommendation at 12. The judge said that there is no question that language barriers are a factor to consider because they may impair a suspect's ability to act knowingly and intelligently. The judge noted Defendant's contention that although he speaks some Spanish, his native language is Mizteco and that he did not "understand very much of what he had been told concerning his rights." *Id*. at 13. Agent Kitts, on the other hand, testified "that she did not have difficulty communicating with the Defendant nor did she observe any indicators that he was having trouble understanding the nature of the rights contained on the Spanish

version of I-214." Report and Recommendation at 13-14. The Report and Recommendation said there was no evidence that Defendant suffers from any diminished mental capacity or was under the influence of medication or alcohol at the time he made the statement to Agent Kitts. The judge concluded that:

> Thus, in light of these factors, along with the court's own observation of the defendant during his testimony at the evidentiary hearing through a Spanish-speaking interpreter, the court finds that at the time of the interview, defendant sufficiently understood the advice of rights under *Miranda* given to him in Spanish. The court further finds that defendant's express waiver was knowingly and intelligently given because he knew the nature of the right being abandoned and the consequences of his decision to abandon it.

*Id*. at 14. The Magistrate Judge found that the Defendant's statements to Agent Kitts were the product of his free and deliberate choice and did not result from any acts of intentional coercion or deception on the part of Kitts, and that Defendant's waiver of his right against self incrimination was knowingly and intelligently given. It was recommended that Defendant's motion to suppress be denied. Report and Recommendation at 15.

The District Judge considered the Report and Recommendation and the short objection to it by Defendant. The judge considered the matter *de novo* and concluded that the Report and Recommendation was correct and therefore adopted it, denying

the Defendant's motion to suppress on July 9, 1998.  Order, I R. Item 30.

After the denial of Defendant's motion to suppress, the parties appeared for a factually stipulated bench trial before the District Judge, III R. 10-11, and thereafter the District Judge found Defendant guilty.  The Defendant reserved his right to appeal the denial of his motion to suppress, which is the basis of the appeal before us.  For reasons that follow, we are satisfied that the record amply supports the findings and conclusions of the Magistrate Judge which were adopted by the District Judge, and affirm the judgment and the denial of the motion to suppress.

**III**

The ultimate issue of the voluntariness of a statement is subject to our *de novo* review, while underlying findings of fact are reviewed only for clear error.  *United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997).  Defendant contends that he possesses only a rudimentary command of Spanish, and that therefore he was incapable of understanding his rights as he was advised of them in Spanish by Agent Kitts.  Defendant also contends that the statements were not truly voluntary because the circumstances of the interview were inherently coercive, especially to a Mexican national unfamiliar with such concepts as the right to remain silent and the right to have an attorney provided at the government's expense.

This is simply an argument that Defendant did not understand the *Miranda*

warnings sufficiently for his waiver to have been made knowingly and intelligently. However, Defendant fails to show that the Magistrate Judge clearly erred in finding to the contrary. Defendant has only pointed to his own testimony which, if accorded complete credibility, could have supported a contrary finding; however this falls short of convincing us that the finding made was clearly erroneous. The Magistrate Judge took into account his own observations of the Defendant's communication abilities as Defendant testified at the hearing and Agent Kitts's testimony concerning her communications with Defendant in Spanish. The evidence was sufficient to support the finding that Defendant understood his rights and voluntarily waived them, and we cannot say that the finding is clearly erroneous.

The language problem here has some similarity to a difficulty we encountered in *United States v. Osuna*, 189 F.3d 1289, 1291 (10th Cir. 1999), which involved the Court Interpreter's Act, 28 U.S.C. §1827 (d) (1). There we noted that any "indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language should trigger the application of Sections (d) and (f) (1) of the Court Interpreters Act." (quoting *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980)). This requires that the judicial officer "shall" use the services of the most available interpreter.

Here, however, this was done with the use of a Spanish interpreter, at the

suppression hearing, II R. at 4, and at the bench trial. III R. at 3. Despite the complication of Defendant's Mizteco Indian native language background, the Magistrate Judge accepted Agent Kitts' testimony that she did not have difficulty communicating with the Defendant (in Spanish), nor did she observe any indications that he was having trouble understanding the nature of the rights contained in the Spanish version of Exhibit I-214. Report and Recommendation at 13-14.

Defendant also contends that "while the facts do not suggest coercion, they do suggest a show of force and deception." Brief of Appellant at 9. This contention is without merit. The undisputed evidence was that restraints were removed from Defendant before the interview. Agent Kitts interviewed Defendant alone, which is less suggestive of coercion than if she had interviewed him in the presence of a number of other officers. In short, the only "show of force" involved was simply that inherent in the fact that Defendant was in custody. Defendant's contention that his statements were a result of government deception is based on Agent Kitts having conducted the interview under the erroneous assumption that Spanish was Defendant's primary language. The argument that this constituted deception is *non sequitur*.

Finally, Defendant makes a strained argument based on the document containing the summary of the interview with Agent Kitts which, as we have noted,

included the declaration that Defendant had been advised that any statement given could be used against him in any "administrative proceeding." Defendant states that no other document from the interview "was imbued with such dignity" as this one, which was the last document presented to Defendant during the interview. Brief of Appellant at 13-14. From this, Defendant contends that this document represents the "final formal embodiment of any and all agreements between the parties," that other "preliminary documents would have arguably merged into that agreement," and thus, Defendant "could have assumed" that his statements would only be used in administrative deportation proceedings, not in a criminal prosecution. *Id*. at 14. The document was not used in the prosecution and Defendant's argument is consequently not persuasive. Agent Kitts testified that she explained at the beginning of the interview that:

> " . . . Anything you say can be used against you *in court or in any immigration or administrative proceeding*."

II R. at 18. (Emphasis added).


We see no basis for concluding that the specification in the sworn statement, limiting use of that document to administrative proceedings, in any way influenced Defendant's previous decision to waive his rights and to answer the questions put to

him.

Accordingly the judgment and the order denying the motion to suppress are

AFFIRMED.


Entered for the Court
William J. Holloway, Jr.
Circuit Judge