**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HASAN ALI HASAN,

Defendant-Appellant.

No. 08-5137

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:05-CR-00174-JHP-1)**

---

Barry L. Derryberry, Research & Writing Specialist, Office of the Federal Public Defender (Julia L. O'Connell, Federal Public Defender, with him on the brief), Tulsa, Oklahoma, for Defendant-Appellant.

Stephen L. Sewell, Assistant United States Attorney, Northern District of Oklahoma (David E. O'Meilia, United States Attorney, and Leena Alam, Assistant United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HENRY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

A jury convicted Hasan Ali Hasan on three counts of perjury. He now appeals that conviction on two bases. First, Mr. Hasan alleges that the

government violated his rights under the Court Interpreters Act ("CIA"), 28 U.S.C. § 1827, by failing to provide him with an interpreter when he appeared on two occasions before a grand jury. Second, he contends that there was not sufficient evidence for a reasonable jury to convict him of perjury beyond a reasonable doubt.

This is the second time that Mr. Hasan has appeared before us with these claims. The first time, in *United States v. Hasan* (*Hasan I*), 526 F.3d 653, 656 (10th Cir. 2008), we concluded that the district court plainly erred by failing to consider whether Mr. Hasan was entitled under the CIA to an interpreter at his grand jury appearances, and we remanded for the district court to answer this question in the first instance. On remand, the district court held that Mr. Hasan was not entitled to an interpreter under the CIA.

We are asked now to review that determination. Because we conclude that the district court did not apply the proper legal standard in its CIA analysis, we must remand again for it to determine in the first instance whether Mr. Hasan "speaks . . . primarily a language other than the English language." 28 U.S.C. § 1827(d)(1)(A). Concerning Mr. Hasan's argument that his convictions are not supported by sufficient evidence, we conclude that a reasonable jury could find beyond a reasonable doubt that he committed perjury. Thus we **VACATE** in part, **AFFIRM** in part, and **REMAND** to the district court for further proceedings.

## BACKGROUND

The facts of this case are presented in detail in *Hasan I*, so we review them here only briefly. Mr. Hasan was 17 years old in 1997 when he fled his native Somalia for the United States. He was granted asylum in this country that same year. In 2004, for reasons that are not clear, authorities developed a renewed interest in Mr. Hasan's history, and he was interviewed on two occasions by federal law enforcement agents regarding inconsistencies in the information he provided when he entered the United States and when he sought asylum.

In 2005, a grand jury was empaneled to investigate whether Mr. Hasan had violated 18 U.S.C. § 1001 by making false statements during one of the agent interviews. Mr. Hasan testified before this grand jury in April 2005 and before a second grand jury in November 2005. He did not consult a lawyer in connection with the grand jury appearances, and the supervising Assistant United States Attorney did not offer Mr. Hasan an interpreter.

In December 2005, Mr. Hasan was indicted on four counts of perjury. He was not charged under 18 U.S.C. § 1001 for statements made during the agent interviews but rather under 18 U.S.C. § 1623 for alleged inconsistencies between statements made before the April grand jury and statements made before the November grand jury.

During pretrial proceedings, Mr. Hasan moved pursuant to Federal Rule of Criminal Procedure 28[1] for the appointment of an interpreter at trial. The district court held an evidentiary hearing on Mr. Hasan's language abilities, considering testimony from a linguist, a probation officer, and a federal agent, each of whom had interviewed him. Before the district court ruled, Mr. Hasan filed another motion offering the CIA[2] as an additional basis for an interpreter at trial.

---

[1]    That rule provides: "The court may select, appoint, and set the reasonable compensation for an interpreter. The compensation must be paid from funds provided by law or by the government, as the court may direct." Fed. R. Crim. P. 28.

[2]    The relevant section of the CIA, 28 U.S.C. § 1827(d)(1), provides:

> (d)(1) The presiding judicial officer . . . shall utilize the services of the most available certified interpreter . . . in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings—
>
> > (A) speaks only or primarily a language other than the English language; or
> >
> > (B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)
>
> so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

The phrase "judicial proceedings instituted by the United States" includes grand jury proceedings. 28 U.S.C. § 1827(j); *see Hasan I*, 526 F.3d at 662 (stating that "the CIA admits no distinction between the grand jury and trial contexts").

The district court denied the request for an interpreter, concluding that Mr.

Hasan "d[id] not speak only or primarily a language other than English." R., Vol.

I, Doc. 56, at 5 (Order, filed Mar. 13, 2006) (emphasis omitted). The court

stated:

> the evidence is overwhelming that although the defendant is
> originally from Somalia, he left that country when he was 17
> and came to the United States. Since being in the United
> States for approximately (9) years, the defendant has been
> employed both as a security guard and a school bus driver,
> both occupations which would require him to communicate in
> English. Additionally, Mr. Hasan testified before the grand
> jury on two separate occasions in English. While Mr. Hasan
> stated on several occasions, during his grand jury testimony,
> that he did not understand what the prosecutor meant or did
> not understand particular terms, Mr. Hasan admits in his grand
> jury testimony that he has taken five English proficiency
> courses and that he did well in these courses. Furthermore,
> when questioned by the probation department, after being
> advised that he was entitled to an interpreter if he spoke only
> or primarily a language other than English, the defendant
> indicated he understood and communicated in English and did
> not want an interpreter during his interview or at any further
> interview or hearing.

*Id.* at 4. Based on these and other factors, the district court concluded that Mr.

Hasan was not entitled to a court-appointed interpreter.

Several weeks later, and about one month before trial began, the district

court sua sponte reversed itself and appointed an interpreter for Mr. Hasan at

trial. Pointing to the fast pace of trial and to indications that Mr. Hasan was

struggling to communicate with his attorney, the court stated that "the best way to

ensure that the defendant's constitutional rights are protected is to appoint an interpreter." R., Vol. I, Doc. 85, at 8 (Order, filed Apr. 12, 2006).

The jury convicted Mr. Hasan on three of the four counts of perjury. He was sentenced to a fifteen-month term of imprisonment and a three-year term of supervised release. He appealed, arguing that the transcripts of his grand jury testimony should have been suppressed because the government violated the CIA by failing to offer him an interpreter during his grand jury appearances. This argument was new; although Mr. Hasan had previously argued that the lack of an interpreter at the grand jury hearings violated his Fifth Amendment rights, and (as discussed above) argued for an interpreter *at trial* pursuant to the CIA, he had never contended that he was entitled under the CIA to an interpreter at the *grand jury* proceedings.

Nonetheless, in *Hasan I* we perceived plain error in the district court's "apparently inconsistent application of the CIA." 526 F.3d at 661. We reasoned as follows: When it initially denied Mr. Hasan's motion for an interpreter at trial, the district court found that his primary language was English under the statute. *Id.* But then the court reversed itself and provided Mr. Hasan with an interpreter for trial. *Id.* If it did so because the court changed its mind on whether Mr. Hasan spoke "primarily a language other than the English language," then Mr. Hasan also might have been entitled under the CIA to an interpreter at the grand jury proceedings. *Id.* at 662. We held that the district court plainly erred by

-6-

"leaving unresolved apparently contradictory rulings on issues of similar consequence," *id.* at 663, and remanded for the court to "ascertain whether the factors that motivated it to reconsider its ruling about the necessity of an interpreter at trial also pertain to the grand jury context," *id.* at 656.

On remand, before Mr. Hasan filed any motions and without an additional hearing to ascertain his English-language abilities at the time of the grand jury proceedings, the district court issued a three-page order finding that the lack of an interpreter before the grand jury had not violated Mr. Hasan's rights under the CIA. The district court rejected the notion that it had been inconsistent in applying the statute, clarifying that it had appointed an interpreter at trial not under the CIA but instead pursuant to Rule 28 "because of the pace that the trial would, out of necessity, proceed." R., Vol. I, Doc. 180, at 2 (Order, filed July 3, 2008). The court denied Mr. Hasan's subsequent motion to reconsider this ruling.

Mr. Hasan has appealed the district court's rejection of his CIA claim. In addition, Mr. Hasan contends that his convictions must be set aside because the evidence at trial was not sufficient for a reasonable jury to find him guilty beyond a reasonable doubt. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

We will first consider Mr. Hasan's claims under the CIA and then turn to the sufficiency-of-the-evidence arguments.

# I.     MR. HASAN'S CLAIMS UNDER THE CIA

Mr. Hasan argues that his grand jury testimony should not have been admitted at trial because the government violated the CIA by failing to provide him with an interpreter before the grand jury.[3]  We conclude that the district court failed to apply the proper legal standard when it rejected Mr. Hasan's CIA claim. Thus, we must remand for the district court to apply the correct law to the facts in the first instance.

## A.     Standard of Review

"'We review the trial court's determination with respect to the appointment . . . of an interpreter only for an abuse of discretion.'"  *United States v. Black*, 369 F.3d 1171, 1174 (10th Cir. 2004) (ellipsis in original) (quoting *United States v. Urena*, 27 F.3d 1487, 1492 (10th Cir. 1994)).  This rule is appropriate "[b]ecause the trial judge is in the best position to assess a defendant's or witness' language usage, comfort level and intelligibility."  *United States v. Osuna* (*Osuna I*), 189 F.3d 1289, 1296 (10th Cir. 1999) (Brorby, J., dissenting). Under the abuse-of-discretion standard, we review the district court's factual determinations for clear error, *see, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) ("A court of appeals would be justified in concluding that a

---

[3]      The government does not dispute that suppression of the grand jury transcripts is the proper remedy if we conclude that Mr. Hasan's rights under the CIA were violated.  Nor does the government dispute that, if the transcripts are suppressed, the indictment must be dismissed and Mr. Hasan's convictions vacated.  *See Hasan I*, 526 F.3d at 662 n.6.

district court had abused its discretion in making a factual finding only if the finding were clearly erroneous."), and its underlying legal determinations de novo, *see, e.g.*, *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) ("Where the exercise of that discretion [to award sanctions] depended on the resolution of a purely legal issue, however, we approach such a question *de novo*.). "'An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law,'" *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998)), or "where the trial court fails to consider the applicable legal standard," *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997); *see also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 (10th Cir. 2009) ("'When the district court errs in deciding a legal issue, it necessarily abuses its discretion.'" (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006))).

## B.    The Court Interpreters Act

In *Hasan I*, we articulated a two-step framework for analyzing Mr. Hasan's claim under the CIA.  First, the district court was to determine "whether, at the time of the grand jury hearings, Mr. Hasan spoke 'only or primarily a language other than the English language.'"  526 F.3d at 666 (quoting 28 U.S.C. § 1827(d)(1)(A)).  Second, if Mr. Hasan's primary language was other than English, then the district court was to determine whether the lack of an interpreter

inhibited his comprehension or communication "to such an extent as to have made the [grand jury hearings] fundamentally unfair." *Id.* (quoting *Osuna I*, 189 F.3d at 1293).

Concerning the first step—whether Mr. Hasan spoke "primarily" English—we stated:

> As the district court correctly perceived, this inquiry is not resolved simply by asking whether Mr. Hasan's native language is other than English. Neither do we think the statute concerns itself with primacy in the sense of which language the defendant speaks most frequently; instead, it seems to us that the term "primarily" in this statute seeks to measure the defendant's comparative ability to speak English.
>
> The Oxford English Dictionary defines the word "primarily" as "[i]n the first order in time or temporal sequence," or as "[w]ith reference to other than temporal order: In the first place, first of all, preeminently, chiefly, principally; essentially." XII Oxford English Dictionary 472 (2d ed. 1989). While the former definition could suggest "native language," or the language first learned, we believe the structure of the statute makes clear that Congress intended the latter definition of the term focused on comparative ability. The CIA extends the right to an interpreter to two classes of people: those who speak only or primarily a language other than English, and the hearing impaired. 28 U.S.C. § 1827(d)(1)(B). The fact that the right is extended to the hearing impaired suggests that Congress was not concerned about the frequency with which one speaks English, or whether one is a native speaker; a hearing impaired person in the United States might well be a native English speaker and speak English on a daily basis, but might not be able easily to understand or communicate in English. Thus, it seems to us the question the statute poses concerns the ability to communicate. Confirming this conclusion, reading the word "primarily" to mean "native" would violate a cardinal rule of statutory construction by rendering surplusage the word "only"

in the statutory phrase "only or primarily a language other than English." Whether a witness's native language was the only language he spoke would be irrelevant, because a witness able to speak only a language other than English would always have as his native language a language other than English.

*Hasan I*, 526 F.3d at 666 (brackets in original) (third citation omitted).

## C.    Application to Mr. Hasan's Case

As noted above, after remand the district court concluded under this first step that Mr. Hasan's primary language was English. In explaining this conclusion, the court stated:

> There should be no doubt from all of the factual findings previously entered herein that the primary language utilized by the Defendant in the performance of his daily life functions was English. Specifically, the evidence was uncontroverted that the Defendant communicated with 1) his employers, 2) students on his bus routes and 3) his wife, in English.

R., Vol. I, Doc. 180, at 2 n.2. As further support for its finding, the district court pointed to "the fact that the Defendant waived the services of an interpreter when he was interviewed by [a] probation officer shortly after the grand jury proceedings." *Id.* at 3.

Mr. Hasan now argues that the district court failed to apply the law as we set it out in *Hasan I*. According to Mr. Hasan, the district court's focus on his communication with his employers, his students, and his wife ignores our instructions that the word "primarily" in the CIA is not to be treated as conterminous with "most frequently." Aplt. Br. at 30. Indeed, his employers,

students, and wife do not speak the Somali language, and Mr. Hasan contends that "the necessity to speak with them in English or forego communication does not rationally point to primacy of English skills over Somalian." *Id.* Whether the district court properly applied the requisite standards under the CIA is a legal question which we review de novo. "We will not give deference to the district court's opinion." *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Financial Corp.)*, 236 F.3d 1246, 1251 (10th Cir. 2001).

We agree with Mr. Hasan that the district court failed to apply the correct legal standard. As highlighted above, the district court considered several indicators suggesting that Mr. Hasan regularly spoke English. But it did not weigh these indicators against contrary indicators of his Somali-language ability. In other words, despite the blueprint we provided in *Hasan I*, the district court did not seek to measure Mr. Hasan's *comparative ability* to speak the language. This is a legal error amounting to an abuse of discretion. There is no doubt that Mr. Hasan used English in some circumstances—perhaps even most circumstances. But under the proper legal standard, such a fact does not necessarily entail a finding that his primary language was English, especially in light of the "welter of conflicting evidence" on Mr. Hasan's language abilities. *Hasan I*, 526 F.3d at 663. This is precisely why we insisted on a comparative standard in the first place, and why it is crucial for the district court to analyze Mr. Hasan's language abilities under this standard.

**D.      Necessity of a Remand**

When the court of appeals notices a legal error, it is not ordinarily entitled to weigh the facts itself and reach a new conclusion; instead, it must remand to the district court for it to make a new determination under the correct law. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) ("[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue."); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414–17 (10th Cir. 1987) (applying *Pullman-Standard*). We will follow just such a course here, for we cannot say that the record supports only one conclusion as to whether Mr. Hasan spoke primarily English. *See Pullman-Standard*, 456 U.S. at 292. To the contrary, as noted above and as discussed in *Hasan I*, the record is highly conflicted on this point. *See Hasan I*, 526 F.3d at 663.

In *Hasan I*, we explained that the CIA contemplates a two-step, sequential inquiry. 526 F.3d at 666–67. In providing remand guidance to the district court, we described the inquiry as follows:

> First, it should consider whether, at the time of the grand jury hearings, Mr. Hasan spoke "only or primarily a language other than the English language." 28 U.S.C. § 1827(d)(1)(A). . . .
>
> . . . .
>
> Second, if the district court finds that at the time of the grand jury proceedings Mr. Hasan's primary language was other than English, it must determine whether the lack of an

> interpreter during his testimony inhibited his "comprehension of the proceedings or communication with . . . the presiding judicial officer, [or his] comprehension of questions and the presentation of . . . testimony, 28 U.S.C. § 1827(d)(1), "to such an extent as to have made the [hearing] fundamentally unfair," *Osuna*, 189 F.3d at 1293.

*Id.* (alterations in original).

Thus, *Hasan I* leaves no room for doubt that the CIA contemplates a sequential, two-step inquiry. We do recognize, however, that just because a multi-step test is logically sequential does not necessarily mean that the test establishes a "rigid order of battle" that requires a court to decide the first step of the test before reaching the others. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009) (internal quotation marks omitted); *see id.* at 818 (holding that it was not mandatory for courts to resolve the first step of the qualified immunity test (i.e., whether the facts alleged or shown by plaintiff establish a violation of a constitutional right) before deciding the second step (i.e., whether any such constitutional right was clearly established at the time of the alleged violation)); *see Strickland v. Washington*, 466 U.S. 668, 697 (1984) (establishing the familiar two-step test for adjudicating ineffective-assistance-of-counsel claims, but noting that "a court need not determine whether counsel's performance was deficient [i.e., step one] before examining the prejudice suffered by the defendant as a result of the alleged deficiencies [i.e., step two]").

We have not directly addressed whether it is mandatory to move sequentially through the CIA's two-step test or whether a court may assume *arguendo* an affirmative answer to the first step and then proceed to resolve the second step. In *Hasan I*, we did describe the district court's undertaking of the second step of the CIA's test in conditional terms, stating "*if* the district court finds that at the time of the grand jury proceedings Mr. Hasan's primary language was other than English," *then* it must resolve the second step of the CIA's test. 526 F.3d at 666 (emphasis added). In other words, we arguably suggested that a necessary *condition* for undertaking an inquiry under the second step is an affirmative finding under the first step (i.e., a finding that defendant speaks only or primarily a language other than English). However, we also noted there that "either" step of the CIA analysis "may be dispositive if not resolved in Mr. Hasan's favor." *Id.* In *Osuna I*, we did not address in discrete, sequential fashion the CIA's two-part test—leaving our view of the order-of-battle question nebulous at best.

Thus, we have not had occasion to squarely address the order-of-battle issue under the CIA. It certainly would not be unreasonable, in light of its plain language and structure, to interpret the CIA as *requiring* the court to resolve the first step of the CIA's two-step test before proceeding to the second step. For example, as relevant here, the CIA's plain language does not evince a congressional concern with providing interpreter protections for all conceivable

-15-

circumstances that could inhibit the comprehension or communication of a party or witness, but rather with those circumstances related to mastery of the English language. *See Hasan I*, 526 F.3d at 666 ("The CIA extends the right to an interpreter to two classes of people: those who speak only or primarily a language other than English, and the hearing impaired."); *Osuna I*, 189 F.3d at 1293 ("While Osuna's rapidity in speaking was one apparent cause of the difficulties, the protection of the Court Interpreters Act to alleviate language problems may not be disregarded."); *Osuna I*, 189 F.3d at 1296 (Brorby, J., dissenting) ("None of these communication pitfalls is related to primary use of a language other than English. Read as a whole, Mr. Osuna's testimony simply does not suggest the district court abused its discretion in failing to apply the Court Interpreters Act."). Thus, arguably a court could not meaningfully and intelligently engage in the second-step comprehension-and-communication inquiry that the CIA contemplates without first knowing whether there is a language problem to begin with—*viz.*, whether the party or witness speaks only or primarily a language other than English. *Cf. Pearson*, 129 S. Ct. at 818 ("'It often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be.'" (brackets omitted) (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring))).

The parties do not advance any arguments concerning whether the CIA requires mandatory application of its sequential, two-step test. In particular, neither party has asked us to assume *arguendo* that Mr. Hasan has prevailed at the CIA's first-step inquiry (i.e., that he has established that his primary language is Somali), and then to proceed to the inquiry's second step. Without briefing and argument from the parties, we think it would be inappropriate for us to resolve here this order-of-battle question. Therefore, we do not address the matter further. Guided by *Pullman-Standard*, we simply conclude that findings under the proper legal standard by the district court at the first step of the CIA's test are a necessary condition for our review and, accordingly, a remand is required.

Having established the necessity for it, we provide guidance to the district court upon remand: First the district court should follow the blueprint laid out in *Hasan I* and undertake a comparative analysis to identify Mr. Hasan's primary language at the time of the grand jury proceedings. If the court concludes that Mr. Hasan spoke primarily English, its analysis should come to an end, for he is not entitled to relief under the CIA. If the district court concludes that Mr. Hasan spoke primarily Somali, then it should proceed to the next step and determine whether, in light of this determination, Mr. Hasan was inhibited in his ability to comprehend and communicate at the grand jury proceedings to such an extent as to have been fundamentally unfair.

In sum, we hold that the district court abused its discretion by failing to employ the proper legal standard in determining whether, at the time of the grand jury proceedings, Mr. Hasan spoke primarily a language other than the English language. We remand for the district court to apply the correct law in the first instance.[4]

## II.    MR. HASAN'S CLAIMS OF INSUFFICIENT EVIDENCE

Mr. Hasan also raises several challenges to the sufficiency of the evidence underlying his three perjury convictions,[5] arguing that no reasonable jury could

---

[4]    During oral argument, Mr. Hasan's counsel resisted the possibility of a remand, although acknowledging that it would be proper for us to do so, if we concluded that the district court applied the wrong legal standard at the first step of the CIA's inquiry. Significantly, defense counsel pointed to practical concerns related to the short duration of Mr. Hasan's sentence (i.e., fifteen months of imprisonment and three years of supervised release) and asserted that the district court would have no institutional advantage over us in undertaking the CIA's two-step inquiry because the central piece of evidence for consideration is the cold grand jury transcripts. Given that Mr. Hasan was sentenced on August 27, 2008, his sentence—including his *three-year* term of supervised release—would seemingly not be over in the very near future, nor has Mr. Hasan's counsel informed us of anything to the contrary. Furthermore, especially with respect to the first-step of the CIA's inquiry regarding Mr. Hasan's primary language, a court reasonably may inform its determination with evidence beyond the grand jury transcripts, including testimonial evidence from individuals who interacted with Mr. Hasan. And the district court was present to hear precisely such testimony at the trial, and we were not. Therefore, Mr. Hasan's institutional-advantage contention is questionable. In any event, as discussed above, under the prevailing law we are obliged to remand this case to the district court.

[5]    Because we conclude that the district court abused its discretion in applying the CIA, we remand this case. In such a circumstance, at least in some instances, we have declined to reach sufficiency-of-the-evidence arguments and, in fact, took that path in Mr. Hasan's first appeal. *See Hasan I*, 526 F.3d at 667 n.8. However, frequently, decisions concerning whether to reach additional

issues, as here, are matters of discretion. They must be made in light of the particular factual circumstances before the court at the time. In this second iteration of Mr. Hasan's appellate proceedings, we conclude that principles of efficient judicial administration militate in favor of our exercising discretion to reach Mr. Hasan's sufficiency-of-the-evidence arguments at this time. *Cf. Ohlander*, 114 F.3d at 1538 (noting that "the district court's failure to apply the correct legal standard could serve as a basis for remand" but concluding that "the interest of efficiency and judicial economy" counseled in favor of exercising discretion to "turn to the merits").

We offer no opinion or prediction concerning the ultimate outcome of the district court's CIA analysis. Mr. Hasan may prevail on his CIA claim before the district court; in that event, his prosecution would come to an end, irrespective of the merits of his sufficiency-of-the-evidence arguments. *See supra* note 3. However, it also is *possible* that the district court will resolve the CIA issues in a way that keeps the sufficiency-of-the-evidence issues alive and would likely oblige this court to resolve those issues in a future appeal. In particular, under the proper legal analysis, the district court could conclude that Mr. Hasan cannot succeed on his CIA claim and, thus, the transcripts need not be suppressed and Mr. Hasan's convictions may remain intact. Given that the parties have now briefed the sufficiency-of-the-evidence arguments twice, and that we have a sufficient record to resolve those arguments, we conclude that it is a prudent and proper exercise of our discretion to reach the sufficiency-of-the-evidence arguments now.

In this regard, *Osuna I* provides useful guidance. There, we ordered a remand to the district court to "determine from the trial record whether lack of an interpreter inhibited Osuna's comprehension of the proceedings or his ability to assist in presenting his case to the jury." 189 F.3d at 1293. Nevertheless, we proceeded to reach and resolve Mr. Osuna's contention of sentencing error. *Id.* at 1294–95. We acknowledged that on remand the district court could conclude that Mr. Osuna was entitled to prevail on his CIA claim and, in that event, "the convictions must be set aside for a new trial." *Id.* at 1294. In that circumstance, we had to recognize that the merits of Mr. Osuna's sentencing challenge would be rendered largely irrelevant: Mr. Osuna either would be acquitted in the new trial, eliminating the need for a new sentencing; or he would be convicted in a new trial, resulting in a new sentencing proceeding where, not only would the district court address sentencing issues anew, but it also undoubtedly would be aware that on appeal the government had "confess[ed] error," *id.* at 1294–95, concerning Mr. Osuna's sentencing challenge. However, we understood that it was *possible* that

have found him guilty beyond a reasonable doubt because the government failed

to establish certain statutory elements.  First, he contends that the government did

not present sufficient evidence that he made irreconcilably contradictory

statements at the grand jury hearings.  Second, he argues that there was not

sufficient evidence to prove the materiality of his allegedly inconsistent

statements.  We reject all of these arguments.

## A.    Standard of Review

"Whether the government presented sufficient evidence to support a

conviction is a legal question that we review de novo."  *United States v. Parker*,

551 F.3d 1167, 1172 (10th Cir. 2008) (internal quotation marks omitted).  With

---

on remand the district court could rule against Mr. Osuna on his CIA claim,
which would keep the convictions intact and keep his sentencing challenge alive;
therefore, we elected to reach the sentencing challenge at that time.  *Id.* at 1294 &
n.6.  Specifically, we stated that "[s]ince the remand we make *may* result in the
convictions being undisturbed, we will go ahead and consider this claim of error
in sentencing."  *Id.* at 1246 n.6 (emphasis added).

   *Osuna I* supports our decision to reach the merits of Mr. Hasan's
sufficiency-of-the-evidence arguments.  Like *Osuna I*, we proceed to reach the
merits even after finding that remand is required on the CIA issue in part due to
the *possibility* that the merits issue may still be viable if the district court rules
against Mr. Hasan on his CIA claim.  And, akin to *Osuna I*, we do this *even
though* a contrary district court ruling in favor of Mr. Hasan on his CIA claim
may render our merits decision essentially for naught.  Furthermore, what
appeared to tacitly guide us in *Osuna I*, does so expressly here:  that is, principles
of efficient judicial administration.  We seek to negate the possible need for the
parties to brief and argue for a third time on appeal the sufficiency-of-the-
evidence arguments that are currently before us.  We underscore that our decision
to reach the merits is discretionary and governed by the unique circumstances of
this case.  On that basis, we turn to Mr. Hasan's sufficiency-of-the-evidence
arguments.

that said, "the restrictive standard of review for a sufficiency of the evidence question provides us with very little leeway." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992).

> [W]e view the facts in evidence in the light most favorable to the government. We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury. Rather, our role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom.

*United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (internal quotation marks omitted).

For all of his sufficiency-of-the-evidence claims on appeal save one, Mr. Hasan failed to object before the district court. "When a defendant challenges in district court the sufficiency of the evidence on specific grounds, 'all grounds not specified in the motion are waived'" and may only be reviewed for plain error. *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)). To establish plain error, Mr. Hasan "'must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Kimler*, 335 F.3d at 1141). "The plain error standard presents a heavy

burden for an appellant, one which is not often satisfied." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

### B.     Perjury Under 18 U.S.C. § 1623

Mr. Hasan was convicted of perjury under 18 U.S.C. § 1623 on the basis of irreconcilably contradictory statements that he allegedly made before the grand juries.  The statute provides, in relevant part:

> (a) Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined under this title or imprisoned not more than five years, or both.
>
> . . . .
>
> (c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—
>
>> (1) each declaration was material to the point in question, and
>>
>> (2) each declaration was made within the period of the statute of limitations for the offense charged under this section.
>
> In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury.  It shall be a

> defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

18 U.S.C. § 1623.  To establish guilt under the statute, the government must prove beyond a reasonable doubt that:  "(1) the defendant made a declaration under oath before a grand jury; (2) such declaration was false; (3) the defendant knew the declaration was false; and (4) the false declaration was material to the grand jury's inquiry."  *United States v. Clifton*, 406 F.3d 1173, 1177 (10th Cir. 2005).

### C.    Irreconcilably Contradictory Statements

Mr. Hasan first argues that his convictions on Counts One and Two are not supported by sufficient evidence because the statements forming the basis for these counts are not irreconcilably contradictory.  Because Mr. Hasan did not raise these challenges before the district court, we review his claims only for plain error.  For the reasons stated below, we conclude that Mr. Hasan cannot establish clear or obvious error, and we reject his claims.

Although we have not opined extensively on what is required to meet the "irreconcilably contradictory" (or "necessarily false") requirement of § 1623(c), one of our sister circuits has sensibly stated that a conviction may only be sustained where the variance between the defendant's two statements "extends beyond mere vagueness, uncertainty, or equivocality.  Even though two declarations may differ from one another, the § 1623(c) standard is not met

-23-

unless, taking them in context, they are so different that if one is true there is no way that the other can also be true." *United States v. Flowers*, 813 F.2d 1320, 1324 (4th Cir. 1987). We adopt this standard here. *See United States v. McAfee*, 8 F.3d 1010, 1014–15 (5th Cir. 1993) (adopting *Flowers* standard); *United States v. Porter*, 994 F.2d 470, 473 (8th Cir. 1993) (same).

### 1.    Inconsistent Statements:  Count One

Count One involves inconsistent statements made by Mr. Hasan concerning when and how his brothers were killed in Somalia. At the April 2005 hearing, as the indictment charges, the following exchange occurred:

> Q. Okay. What were the other reasons that you left your country?
>
> A. The war that was going around and nobody can stay there and they took our house. They're—I mean, they took it and leave there. And my brother got killed there and all my family ran away.
>
> Q. What's the name of your brother that had been killed?
>
> A. Sadad. Sadad.
>
> Q. How do you spell his name?
>
> A. S-A-D, I think, A-D.
>
> Q. S-A-D—
>
> A. A-D or A-T. Sadad.
>
> Q. And how long before 1997 when you filled out this form had your brother been killed?

A. It was around—as I remember, it was '92, '93.

Q. Okay. And who killed him?

A. One of those who shot him, the Somalian people, the one that was making war in the country.

Aplt. Addendum of Exs., Ex. 6, at 10 (Grand Jury Tr., dated Apr. 5, 2005). At the November 2005 grand jury appearance, as the indictment avers, the following exchange occurred:

Q. What's the name of your brother that had been killed?

A. Sadad.

Q. What's the name of your brother that was killed in the car wreck?

A. That's—that's Sadad. That's my brother Sadad and the other is Mohammed.

Q. The one that got shot. And what year did he get shot?

A. 1996.

*Id.*, Ex. 7, at 26 (Grand Jury Tr., dated Nov. 7, 2005).

The government's theory at trial was that these statements were irreconcilably contradictory because Mr. Hasan's brother Sadad could not have been shot to death *and* killed in a car wreck. Mr. Hasan now contends that rather than being inconsistent these statements only indicate that he was confused. He points in particular to his response, "That's—that's Sadad. That's my brother Sadad and the other is Mohammed." According to Mr. Hasan, there is ambiguity

in the words "that" and "the other," and the prosecutor should have clarified who Mr. Hasan was referring to. Aplt. Br. at 18–20. Instead of undertaking the "easy fix" and asking who was shot and who was killed in a car wreck, *id.* at 19, Mr. Hasan contends that the prosecutor preyed on his confusion, producing "nothing but doubt about who was shot and who was killed in a wreck," *id.* at 20. As a result, "[n]o reasonable juror could have found the accounts irreconcilably incompatible." *Id.* at 20.

Although we agree with Mr. Hasan that there is some confusion in his responses, he has not established clear or obvious error. In particular, we do not believe that the district court would have committed such error in finding that, in the full context of Mr. Hasan's testimony, a reasonable jury could conclude: (1) in his April appearance, Mr. Hasan meant it when he said that his brother Sadad was shot to death; and (2) in his November appearance, Mr. Hasan meant it when he said that his brother Sadad was killed in a car wreck. These two factual statements cannot simultaneously be true. And although the prosecutor could have done more to clarify, the district court would not have clearly or obviously erred in concluding that a reasonable jury could find that the questions were not the cause of Mr. Hasan's inconsistent answers here. *Cf. United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998) ("[W]here a prosecutor's question is only 'arguably ambiguous,' a defendant's understanding of the question is for the jury

to resolve in the first instance."). Thus, we do not detect plain error, and we must reject Mr. Hasan's sufficiency-of-the-evidence challenge to Count One.

### 2. Inconsistent Statements: Count Two

Count Two involves inconsistent statements made by Mr. Hasan concerning harms inflicted upon his sister. As the indictment alleges, the following exchange occurred at the April 2005 grand jury appearance:

> Q. Did anyone in Somalia do things to you that hurt you physically?
>
> A. Yeah.
>
> Q. What did they do to you?
>
> A. Killing my brother, shot my father, try raping my sister.

Aplt. Addendum of Exs., Ex. 6, at 20–21. At the November 2005 grand jury appearance, as the indictment avers, the following exchange took place:

> Q. Did anything happen to your sister in Somalia?
>
> A. No, she—she was—she moved from Somalia a long time ago. She was—she was in Canada.
>
> Q. Okay. But—but when she was in Somalia, did anybody try to do—hurt her?
>
> A. I don't remember because I was staying home always. They always keep me at home.

*Id.*, Ex. 7, at 32.

The government's theory at trial was that these statements were irreconcilably inconsistent because it cannot be true that his sister was the victim

of an attempted rape *and* that she was not the victim of an attempted rape. Mr. Hasan now argues to the contrary that no reasonable jury could have found an irreconcilable contradiction in these statements. First, he contends, the transcript indicates that he was confused by the November question, "Did anything happen to your sister in Somalia?" Aplt. Br. at 21. He argues that his "complete answer confirms that he thought he was being asked if his sister was still in Somalia"—not whether she had suffered any violence while there. *Id.* When the prosecutor did clarify that he was asking about harm to his sister, Mr. Hasan responded: "I don't remember." Thus, Mr. Hasan insists that the statements cannot be irreconcilably contradictory because "[i]t is at once logically possible that the attempted rape occurred, and that the Defendant did not recall it in his November testimony." *Id.* at 22.

We understand the logic of Mr. Hasan's argument, but he cannot establish clear or obvious error on this issue. Mr. Hasan is correct that his November 2005 statement, "I don't remember," is not in itself irreconcilably contradictory with his earlier statement that someone tried to rape his sister. However, the jury had before it Mr. Hasan's complete November grand jury testimony, and it could permissibly reach conclusions concerning the import of his charged statements by viewing them in the context of his other testimony. In particular, immediately following the statements noted above, the following exchange took place between the prosecutor and Mr. Hasan:

-28-

Q. You don't remember?

A. No.

Q. That's your answer?

A. Yeah.

Q. Do you remember having been interviewed here in the Grand Jury on April 5th of 2005, and having said in answer to the question, What did they do to you, you said, Killing my brother, shot my father, try raping my sister. Is that something that you would forget?

A. It wasn't my sister, it was my cousin.

Q. All right. But you said sister, didn't you?

A. I didn't.

Q. Do you want to see the transcript?

A. *I don't remember. I said sister, I said cousin that they raped her because my sister was in Canada a long time.*

Q. Killing my brother, shot my father, try raping my sister. That's what it says; right?

A. Yeah, that was what it says, but—

Q. Now, do you think our transcriptionist here didn't understand the difference between sister and cousin?

A. *I don't know, but it was my cousin who trying to get raped because my sister was in Canada a long time ago.*

Aplt. Addendum of Exs., Ex. 7, at 32–33 (emphasis added). This additional

testimony could have led a reasonable jury to view Mr. Hasan's statement, "I

don't remember," as charged in the indictment, in a different light. In particular,

-29-

in this testimony, Mr. Hasan pairs the exact same statement, "I don't remember"—and later a somewhat similar statement, "I don't know"—with information concerning an alleged attempted rape involving his cousin and *not* his sister, which arguably could have led a reasonable jury to conclude that Mr. Hasan actually *did* remember whether his sister was subjected to an attempted rape, and that Mr. Hasan's testimony at that time was that it did not happen. More to the point, the district court would not have clearly or obviously erred in finding that, given this statement concerning Mr. Hasan's cousin, a reasonable jury could have determined that Mr. Hasan remembered a single incident of an attempted rape of a female family member, and that this incident involved his cousin and *not* his sister. Put another way, the district court would not have clearly or obviously erred in concluding that a reasonable jury could have found that the true import of Mr. Hasan's November 2005 testimony, as alleged in the indictment, was that there was no attempted rape of his sister. Therefore, the district court would not have clearly or obviously erred in concluding that a reasonable jury could find that: (1) in his April appearance, Mr. Hasan meant it when he said that his sister was the victim of an attempted rape; and (2) in his November grand jury appearance, Mr. Hasan meant it when he said that his sister was not the victim of an attempted rape. These two factual statements cannot at once be true. Thus, we do not detect plain error, and we must reject Mr. Hasan's sufficiency-of-the-evidence challenge to Count Two.

**D.    Materiality**

We next consider Mr. Hasan's contentions that the evidence was insufficient to meet § 1623(c)(1)'s materiality requirement.  He makes two specific arguments on this score.  First, as to all three counts on which he was convicted, Mr. Hasan contends that "no evidence enabled the jury to determine what decision the two grand juries were trying to make."  Aplt. Br. at 22.  Second, as to Count Three, even if the petit jury was aware of the decision the grand jury was trying to make, Mr. Hasan alleges that "the government failed to establish a materiality nexus with the April grand jury testimony."  *Id.*  We reject both claims.

Under the statute, to prove that a defendant made false statements before the grand jury, the government must show that "each declaration was material to the point in question."  18 U.S.C. § 1623(c)(1).  To be material to a charge of perjury, a statement must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed."  *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted); *accord United States v. Finn*, 375 F.3d 1033, 1038 (10th Cir. 2004); *see also United States v. Vap*, 852 F.2d 1249, 1253 (10th Cir. 1988) ("Testimony is material if it had a tendency to influence, mislead or hamper the grand jury in a matter which it had the authority to investigate.  The testimony need not have an actual effect; it merely must be capable of influencing the grand jury." (citations,

ellipsis, and internal quotation marks omitted)); *see also* Black's Law Dictionary 1066 (9th ed. 2009) (defining "material" as "[h]aving some logical connection with the consequential facts," or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential").

"Materiality is an element of the crime of perjury, which must be submitted to the jury and proven by the prosecution beyond a reasonable doubt." *United States v. Durham*, 139 F.3d 1325, 1329 (10th Cir. 1998). In *United States v. Gaudin*, the Supreme Court provided a framework for evaluating the factual aspects of a jury's materiality finding:

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?" The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality (quoted above) to these historical facts.

515 U.S. 506, 512 (1995); *accord Finn*, 375 F.3d at 1038; *see also United States v. Najera Jimenez*, 593 F.3d 391, 399–400 (5th Cir. 2010). In this case, the relevant decisionmakers are the two grand juries before which Mr. Hasan appeared in 2005. The government was required to prove that Mr. Hasan's statements were material to the determination being made by each grand jury. *See United States v. Allen*, 892 F.2d 66, 68 (10th Cir. 1989) ("The materiality test is determined at the time and for the purpose for which the allegedly false statement was made.").

### 1. Proof of the Grand Jury's Purpose

Mr. Hasan first argues, pointing to *Gaudin*, that there was not sufficient evidence to establish materiality because the petit jury was not adequately informed of the nature of the grand juries' investigations. The premise underlying this argument is simple: without information about the purpose of the grand juries' inquiries, no reasonable jury could decide if statements were material to those inquiries. *See Finn*, 375 F.3d at 1040. Because Mr. Hasan did not raise this objection before the district court, we review it only for plain error.

To evaluate Mr. Hasan's claim, it is necessary to review the evidence before the petit jury going to the purpose of the grand juries' inquiries. First, the jury heard and received copies of Mr. Hasan's testimony from each grand jury appearance. The transcripts indicated that before the April grand jury the prosecutor stated: "Mr. Hasan, this is a Federal Grand Jury that is investigating possible violations of the Federal Criminal Law involving violations of Title 18, U.S. Code, Section 1001." Aplt. Addendum of Exs., Ex. 6, at 2–3. And before the November grand jury the transcripts show that the prosecutor told Mr. Hasan "[t]his is a Federal Grand Jury that's investigating possible violations of the Criminal Law." *Id.*, Ex. 7, at 2. The petit jury also received a copy of the indictment against Mr. Hasan, which stated:

> It was material to each of the [grand jury] proceedings . . . to determine whether the Defendant, **HASAN ALI HASAN**, had given truthful answers to federal agents during an interview

-33-

conducted on October 20, 2004, concerning answers he had previously given in 1997 to federal immigration agents in order to remain in the United States under asylum. It was material to the November 7, 2005, Grand Jury inquiry whether the Defendant had committed perjury in his April 5, 2005, Grand Jury answers.

R., Vol. I, Doc. 2, at 1–2 (Indictment, filed Dec. 6, 2005). The federal law enforcement agent who interviewed Mr. Hasan in October 2004 testified at length about the subjects they covered. *See* R., Vol. 4, Pt. 1, at 32–100 (Trial Tr., dated May 16, 2006). And a copy of the agent's notes from his interview with Mr. Hasan were admitted as an exhibit at trial. *See* Aplt. Addendum of Exs., Ex. 5.

Mr. Hasan argues that this was not enough to establish the purpose of the grand jury proceedings beyond a reasonable doubt. He points to a Ninth Circuit case that states that the government may prove materiality "by introducing the complete transcript of the prior proceeding, by presenting testimony from persons who witnessed the proceedings, or by presenting testimony from a member of the grand jury." Aplt. Br. at 23 (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 819–20 (9th Cir. 1999)) (citations omitted). Reasoning inductively, Mr. Hasan argues that, because the government did not do any of these things in his case, it must have failed to introduce sufficient evidence of materiality.

Mr. Hasan has not established that any deficiencies in the government's evidence would have rendered clear or obvious error the district court's decision to uphold the jury's verdict. There was direct and indirect evidence of the grand

jury's purpose, and by the plain terms of the perjury statute, there is no need for the government to rely on the specific means or proof that Mr. Hasan suggests. *See* 18 U.S.C. § 1623(e) ("Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence."). The case relied on by Mr. Hasan, *Leon-Reyes*, is inapposite (even if it were binding on us, which obviously it is not), for it discusses in general terms the *kinds* of evidence that may be used to establish materiality, but does not mention the issue here—the *quantum* of evidence required for the petit jury to determine the purpose of the grand juries' inquiries.[6] Our own independent review of the law also turns up no cases suggesting that it would have been clear or obvious error under current law for the district court in this case to conclude that a reasonable jury could have discerned the purpose of the grand juries. *See Finn*, 375 F.3d at 1038–40; *cf. United States v. Ostertag*, 671 F.2d 262, 264–65 (8th Cir. 1982) (discerning the scope of the grand jury's inquiry from the appellant's testimony before the grand jury). Therefore, we discern no plain error and must reject Mr. Hasan's claim that there was insufficient evidence to establish the investigatory purposes of the grand juries.

---

[6] In the end, *Leon-Reyes* does not help Mr. Hasan anyway, for the court in that case could "find no reason" to fault the government's reliance on *summaries* of a witness's previous testimony as a means of proving materiality. *See* 177 F.3d at 820.

## 2.    Materiality of Count Three

Finally, Mr. Hasan argues that the inconsistent statements supporting his conviction on Count Three were not material to any issue examined by the April 2005 grand jury. Because he raised this claim before the district court, to prevail on appeal, Mr. Hasan needs to show that, viewing the evidence de novo and in the light most favorable to the government, no reasonable jury could have found him guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Parada*, 577 F.3d 1275, 1283 (10th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3687 (U.S. May 24, 2010) (No. 09-8388).

Count Three concerns testimony given by Mr. Hasan about injuries to his mouth and teeth that he suffered while in Somalia. At his appearance before the April grand jury, Mr. Hasan stated that he had suffered broken teeth in an attack; before the November grand jury he denied having received such an injury. Mr. Hasan now argues that any statement about his teeth could not have been material to the April grand jury's investigation. He reasons as follows: The April grand jury "was investigating the truthfulness of the statements that Hasan made to federal agents in 2004, regarding his personal and family history." Aplee. Br. at 34. But when the federal agent who interviewed Mr. Hasan in 2004 testified at trial, he "did not disclose any statements made by the Defendant about harm he suffered in Somalia or the condition of his teeth." Aplt. Br. at 26. Thus any statement about broken teeth could not have been material to the April grand

-36-

jury's inquiry because Mr. Hasan had not said anything about teeth to the federal agent and there was no potential falsehood for the grand jury to uncover on the topic.

Mr. Hasan frames the materiality inquiry too narrowly. As noted above, for testimony to be material, it "need not have an actual effect; it merely must be 'capable of influencing' the grand jury." *Vap*, 852 F.2d at 1253 (quoting *United States v. Girdner*, 773 F.2d 257, 259 (10th Cir. 1985)). Our sister circuits take the same view. The Ninth Circuit has said:

> The only requirement is that the question be material to a subject of grand jury inquiry. The evidence need not be material to the main issue and it need not be directed to the primary subject of the investigation. It is material if it is relevant to any subsidiary issue then under consideration.

*United States v. Percell*, 526 F.2d 189, 190 (9th Cir. 1975); *see also United States v. Farnham*, 791 F.2d 331, 334 (4th Cir. 1986) ("Given the wide-ranging investigative function of the grand jury, the materiality of any line of inquiry pursued by a grand jury must be broadly construed." (citation omitted)). The April grand jury was investigating allegedly false statements made by Mr. Hasan to the federal agent regarding his family and personal history. The agent's testimony indicates that portions of the 2004 interview focused on physical harms suffered by Mr. Hasan and his family. Mr. Hasan's statements to the April grand jury that he suffered broken teeth involve harms he suffered in Somalia and thus would be material to that grand jury's investigation into whether Mr. Hasan made

false statements about his personal circumstances in his home country. This is so even if he made no mention of broken teeth during the 2004 agent interview. In this light we are confident that a reasonable jury could conclude that Mr. Hasan's statements at the April grand jury were material, and we reject Mr. Hasan's claim that the government failed to present sufficient evidence on this count.

## CONCLUSION

Because the district court failed to apply the correct legal standard in determining whether Mr. Hasan spoke "primarily a language other than the English language," we remand this case for the district court to conduct a proper analysis under the CIA. We also reject all of Mr. Hasan's claims that his convictions are not supported by sufficient evidence. Thus we **VACATE** in part, **AFFIRM** in part, and **REMAND** for further proceedings.