**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESUS MANUEL MENDEZ,

    Defendant - Appellant.

No. 20-2142
(D.C. No. 2:20-MJ-01439-SMV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Jesus Manuel Mendez appeals from the district court's revocation of his

pretrial release under 18 U.S.C. § 3148(b) for witness tampering. Mendez asks us to

disregard his witness tampering because the government placed him in a halfway

house with the witness and nobody read to him in Spanish his conditions of release

that barred contact with potential witnesses. But he went into the witness's room to

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

discuss his case and does not argue that he cannot read English. Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

## I. Background

The government charged Mendez with transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Authorities placed Mendez in a cell for three days with one of the illegal aliens Mendez allegedly transported, F.S.P.-P. The government presented evidence that during this time, "Mendez [told F.S.P.-P.] over and over, 'You know what, don't press charges on me. You press charges on me, they're going to detain you here for—for a few months. But if you don't, they'll release you right away, and I can make arrangements with my people so we can—we can smuggle back into the U.S.'" Aplt. App. at 27.

The district court later granted Mendez release to a halfway house pending trial. Mendez's conditions of release included the following: "Defendant must not violate federal, state, or local law while on release," and must "[a]void all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants." Aplee. Supp. App. Vol. I at 6. Mendez signed a form written in English indicating that he had read these conditions of release.

The government placed Mendez and F.S.P.-P. in the same halfway house. At a hearing on the government's revocation motion, the government presented evidence that Mendez arranged for another resident of the halfway house, Brian Anderson, to approach F.S.P.-P. while F.S.P.-P. was in his room. When F.S.P.-P. refused

2

Anderson's request for F.S.P.-P. to follow him to the kitchen, Anderson said something along the lines of "'You know what, you'll follow me, you know, the good way or the bad way.'" Aplt. App. at 26. And the government presented evidence that Mendez went into F.S.P.-P.'s room at the halfway house about five minutes later and said something along the lines of "'You know what, don't press charges on me. I have family. I'm on probation. Don't press charges.'" *Id.*

Mendez testified through an interpreter that his conditions of release were "not read to [him] in Spanish" and that he "was told that [he] needed to sign [a form indicating he had read the conditions of release] in order to be released on bail." *Id.* at 49. He "was so excited to be released again that [he] signed very, very quickly, hastily." *Id.* He did not testify that he cannot read English or explicitly testify that he did not read the conditions of release.

The district court found "[b]y clear and convincing evidence . . . Mendez violated his conditions of release by having both direct and indirect contact with F.S.P.-P., a material witness in his case; and [Mendez] is unlikely to abide by any condition or combination of conditions of release." *Id.* at 12.

## II.  Discussion

This court "appl[ies] de novo review to mixed questions of law and fact concerning the detention or release decision, but . . . accept[s] the district court's findings of historical fact which support that decision unless they are clearly erroneous." *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

Following a hearing, the district court "shall enter an order of revocation and detention" if the court makes the required findings. 18 U.S.C. § 3148(b). First, the court must find either (1) "probable cause to believe that the person has committed a Federal, State, or local crime while on release," or (2) "clear and convincing evidence that the person has violated any other condition of release." *Id.* § 3148(b)(1)(A)–(B). In addition, the court must find either (1) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," or (2) "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* § 3148(b)(2)(A)–(B).

Mendez does not challenge the district court's finding that he "is unlikely to abide by any condition or combination of conditions of release." Aplt. App. at 12. Nor does he dispute the district court's finding that he violated the conditions of his release via his direct and indirect contact with F.S.P.-P. But he makes two arguments as to why this violation should have been excused.

First, Mendez argues that because the marshals placed him in the same halfway house with F.S.P.-P., he could not avoid incidental contact with F.S.P.-P. This argument lacks heft because the contact in question was not incidental but was instead intentional. Mendez went into F.S.P.-P.'s room in an effort to persuade F.S.P.-P. to refrain from testifying.

Second, Mendez argues that the government's failure to explain his conditions of release to him in Spanish amounted to a due process violation. But they were

4

given to him in writing (in English) and Mendez does not argue that he cannot read English, let alone cite any evidence establishing this fact. Indeed, Mendez testified that he did not appreciate the content of the form he signed acknowledging his conditions of release because he signed it "hastily" out of his excitement to be released. He did not testify that he could not have understood it if he had taken the time to read it. And the fact that Mendez testified in Spanish through an interpreter does not compel the conclusion that he cannot read or speak English. After all, Mendez testified at both the revocation hearing before the magistrate judge and the appellate hearing before the district court and never testified that he had been unable to understand English. *Cf. United States v. Hasan*, 609 F.3d 1121, 1129 (10th Cir. 2010) (remanding for further consideration of whether the defendant was entitled to an interpreter even though the defendant "used English in some circumstances—perhaps even most circumstances"). The evidence does not support Mendez's alleged due process violation.

### III.  Conclusion

We affirm the district court's revocation of Mendez's release. We also grant the government's unopposed motion to seal Volume II of its supplemental appendix, which contains Mendez's pretrial services report.

Entered for the Court
Per Curiam

5